IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MJ ACQUISITIONS, INC., a Michigan corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| SMS LIMITED, a Delaware corporation, | ) ) |
| Defendant. | ) ) ) ) |

CLARK HILL PLC
By:   Thomas M. Dixon (P41870)
       tdixon@clarkhill.com
       Mark Zietlow (P37022)
       mzietlow@clarkhill.com
       Matthew W. Heron (P61501)
       mheron@clarkhill.com
Attorneys for Plaintiff
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
(313) 965-8300

**COMPLAINT AND JURY DEMAND**

Plaintiff, MJ Acquisitions, Inc. ("Plaintiff" or "MJ Acquisitions") complains of Defendant SMS Limited ("Defendant" or "SMS Limited") as follows:

**NATURE OF THE ACTION**

1.    This is a complaint for infringement of MJ Acquisitions' nationally famous trademarks SALEEN® (stylized), SALEEN®, and SALEEN PERFORMANCE VEHICLES™ and for related claims based on the unauthorized use of these trademarks by SMS Limited. Plaintiff

1

alleges claims for: (1) federal trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114); (2) federal unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) federal trademark dilution under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); (4) common law trademark infringement, unfair competition and misappropriation; and, (5) common law unjust enrichment.

## THE PARTIES

2.  Plaintiff MJ Acquisitions is a Michigan corporation having a principal place of business at 1225 East Maple Road, Troy, Michigan 48083-2818.

3.  Upon information and belief, Defendant SMS Limited is a Delaware corporation doing business in Michigan with its principal place of business in the County of Riverside, California, located at 2735 Wardlow Road, Corona, California 92882-2869.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 15 U.S.C. § 1121, as it involves substantial claims arising under the United States Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, without regard to the amount in controversy.

5.  This Court has supplemental jurisdiction over MJ Acquisitions' claims arising under the laws of Michigan pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6.  This Court has personal jurisdiction over SMS Limited on several independent bases. *First*, the violation of a trademark holder's rights gives rise to jurisdiction where the trademark holder resides. *Second*, Defendant operates an interactive website at

www.smslimitedusa.com that solicits and allows Michigan residents to order and/or purchase vehicles on the Internet through the display and use of unauthorized "Saleen" trademarks or substantially identical versions thereof.  The operation of such a website subjects Defendant to personal jurisdiction in Michigan.  *Third*, under the "effects test," the Defendant intended to, and did, cause tortious injury to the Plaintiff in Michigan.

## GENERAL ALLEGATIONS

*FACTUAL BACKGROUND*

7. MJ Acquisitions owns and operates the SALEEN® products business.  MJ Acquisitions owns the nationally famous trademarks SALEEN® (stylized) and SALEEN® (the "SALEEN® Marks") and the common law trademark SALEEN PERFORMANCE VEHICLES™.

### The Earlier Businesses

8. Over the past quarter century, SALEEN® branded cars have come to be identified as ultra-high-performance vehicles.  The core of the SALEEN® products business is the design, engineering, manufacture and sale of these specially modified and enhanced versions of exemplary mainstream cars.  These unique, low-volume SALEEN® brand products are sold by MJ Acquisitions under its registered trademarks, the SALEEN® Marks, and the common law mark SALEEN PERFORMANCE VEHICLES™.  These products have emerged as having superior all-around performance and an exhilarating driving experience optimized to real-world road conditions.  These products and their marks are recognized worldwide.

9. Upon information and belief, the recognition of the SALEEN® branded products (including, but not limited to vehicles, parts and apparel) began when racing driver Stephen M. Saleen ("Steve Saleen") started a sole proprietorship business he called "Saleen Autocraft" (on June 21, 1983).  Soon after, on February 16, 1984, Steve Saleen purportedly entered into an agreement with Saleen Autocraft (his sole proprietorship) for the use of his name and likeness

(the "1984 Document"). Later that same year, Steve Saleen incorporated his business in California under a new name, Saleen Autosport, Inc. (incorporated on August 2, 1984). Saleen Autosport, Inc. ceased doing business in early 1989 when the corporation was suspended by both the California Secretary of State and the California Franchise Tax Board.

10. Over five (5) years later, on September 8, 1994, Steve Saleen started a new business known as Saleen Productions Ltd., and this business was incorporated in California. Soon after, the corporate name was changed twice by amendment ─ initially to Saleen Performance, Inc. (April 27, 1995) and then to Saleen Incorporated (October 8, 1999). Later, on September 24, 2003, Saleen Incorporated was merged into a Delaware corporation also known as Saleen Incorporated. (Collectively, Saleen Productions Ltd., Saleen Performance, Inc., and Saleen Incorporated are herein referred to as the "Saleen companies.")

### The Trademarks

11. On October 12, 1994, Steve Saleen applied to the United States Patent and Trademark Office ("USPTO") for registration of US Trademark App. Serial # 74/584,925 for the following stylized mark (the "First Saleen Mark"):

**SALEEN**

On October 8, 1996, the USPTO issued U.S. Trademark Reg. # 2,005,539 to registrant Steve Saleen for the First Saleen Mark. (A copy of the Registration Certificate is attached hereto as **Ex. A**.)

12. On April 3, 1998, Steve Saleen *individually* assigned the First Saleen Mark to Saleen Performance, Inc. This individual assignment by Steve Saleen confirmed that whatever

interest (if any) had been held by Saleen Autocraft pursuant to the 1984 Document was previously extinguished. (A copy of the assignment document recorded with the USPTO on June 22, 1998, is attached hereto as **Ex. B**.)

13.     On March 26, 1999, Saleen Performance, Inc. applied for registration of US Trademark App. Serial # 75/670,384 for the following word mark (the "Second Saleen Mark"):

## SALEEN

On November 28, 2000, the USPTO issued U.S. Trademark Reg. # 2,407,911 to registrant Saleen Performance, Inc. for the Second Saleen Mark. (A copy of the Registration Certificate is attached hereto as **Ex. C**.)

### MJ Acquisitions

14.     On January 19, 2009, MJ Acquisitions was incorporated under the laws of the State of Michigan.

15.     On January 30, 2009, MJ Acquisitions acquired a significant part of the assets of Saleen Incorporated. As part of this transaction, MJ Acquisitions acquired all of the SALEEN® Marks.

16.     After the acquisition, Saleen Incorporated changed its name to PEXT, Inc. (on or about March 19, 2009).

17.     Since about February 2009, MJ Acquisitions ─ continuing the operations of the SALEEN®-branded products business ─ has been conducting business using the mark SALEEN PERFORMANCE VEHICLES™ (the "Performance Mark").

18.     On May 12, 2009, MJ Acquisitions filed a Certificate of Assumed Name with the Michigan Bureau of Commercial Services in order to transact business in Michigan under the assumed name of SALEEN PERFORMANCE VEHICLES™.

19. For over 25 years, the Saleen companies, and now MJ Acquisitions, have spent substantial sums of money and have expended significant effort in advertising, promoting, protecting and developing the SALEEN® Marks throughout the United States and beyond. As a result of such efforts and expenditures, considerable goodwill in the SALEEN® Marks (as well as in the Performance Mark) has been established. (Collectively, the SALEEN® Marks and the Performance Mark are designated as the SALEEN® Brand Marks.) The SALEEN® Brand Marks have become, and will continue to be, widely known and recognized throughout the United States and beyond and are indicia of high quality automotive goods and services. These automotive goods and services are now provided by MJ Acquisitions.

20. The SALEEN® Brand Marks are part of a family of marks owned by MJ Acquisitions and used in the SALEEN® products business to uniquely identify its products and services, and this family of marks further includes, but is not limited to, a federally registered stylized "S" mark, the federally registered mark SPEEDLAB®, the mark "RACECRAFT™," and the mark "SUPERSHAKER™." The federally registered styled "S" mark is U.S. Trademark Reg. # 2,007,476. The federally registered mark SPEEDLAB® is U.S. Trademark Reg. # 3,593,081. MJ Acquisitions just received a notice of allowance of registration for the mark "SUPERSHAKER™."

21. The SALEEN® Brand Marks are famous and distinctive. They have come and will continue to be associated by the consuming public exclusively with the products and services first marketed and sold by the Saleen companies and now marketed and sold by MJ Acquisitions. The SALEEN® Brand Marks are invaluable assets of great and substantial and worth to MJ Acquisitions.

**Defendant SMS Limited's Activities**

22. Upon information and belief, on May 14, 2007, Steve Saleen resigned from Saleen Incorporated.

23. Upon information and belief, after leaving Saleen Incorporated, on June 6, 2007, Steve Saleen was hired as CEO of ZX Automobile Company of North America, a subsidiary of the China America Cooperative Automotive Inc. ("ZX").

24. Upon information and belief, on June 8, 2007 — just two days after he was hired by ZX, and only about three weeks after he resigned from Saleen Incorporated — Steve Saleen caused Defendant SMS Limited to be incorporated in Delaware.

25. Upon information and belief, on August 9, 2007, shortly after he incorporated SMS Limited and while he continued to work as CEO for ZX, Steve Saleen filed numerous intent-to-use trademark applications, incorporating the word "SMS Limited" with the USPTO, under various classifications of goods, as follows: 1) Class 12 for "Automobiles and structural parts therefor; Land vehicles and structural parts therefor; Motors for automobiles; Motor cars for transport on land" (U.S. TM App. Ser. # 77/251,088); 2) Class 25 for "T-shirts; Shirts; Sweat shirts; Jackets; Hats; Gloves" (U.S. TM App. Ser. # 77/251,133); 3) Class 37 for "Custom rebuilding of existing land vehicles and structural parts therefor" (U.S. TM App. Ser. # 77/251,129); 4) Class 42 for "Design for others in the field of automobiles and parts therefor" (U.S. TM App. Ser. # 77/251,421); and, 5) Class 45 for "Consulting services in the field of compliance with environmental regulations and safety standards for certification of land vehicles" (U.S. TM App. Ser. # 77/251,295).

26. On December 14, 2007, SMS Limited obtained the domain name www.smslimitedusa.com. The domain name was registered by Sean Saleen, who, upon

7

information and belief, is the director of sales for SMS Limited.

27. On March 13, 2008, a press release issued by SMS Limited announced that the company "will focus on the expansion into the high-end of the diverse American Muscle Car and Global Supercar markets."

28. On April 2, 2009, SMS Limited announced its intention to market specially modified and enhanced versions of mainstream cars bearing the unauthorized "Saleen" mark, in violation of MJ Acquisitions' exclusive and uncontestable trademark rights.

29. Upon information and belief, on July 31, 2009, notwithstanding MJ Acquisitions' senior use and rights in the Performance Mark, Steve Saleen filed U.S. Trademark App. Ser. # 77/794,833 for the exact same mark ─ "Saleen Performance Vehicles." (A copy of this trademark application is attached hereto as **Ex. D**.) As part of his application, Steve Saleen now claims that he first began using the term "Saleen Performance Vehicles" in commerce on February 15, 2009, and that he "is using the mark in commerce, or [his] related company or licensee is using the mark in commerce, or [his] predecessor in interest used the mark in commerce, on or in connection with the identified goods and/or services." Steve Saleen further attached two specimens purportedly confirming SMS Limited's unauthorized use of the mark "Saleen Performance Vehicles" in commerce.

30. As established by its business activities, SMS Limited fully intended to and is directly competing with MJ Acquisitions and is unlawfully using marks owned by MJ Acquisitions for the design, manufacture and sale of its specially modified and enhanced versions of mainstream cars; SMS products bear the unauthorized "Saleen" marks.

# COUNT I

## FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

### (Section 32 of the Lanham Act)

31.     MJ Acquisitions realleges and incorporates herein by reference the allegations of Paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32.     Despite MJ Acquisitions' well-known and substantial rights in the SALEEN® Marks, Defendant has used and continues to use in Michigan and throughout the United States unauthorized "Saleen" marks and/or counterfeits, copies, reproductions or colorable imitations thereof that are substantially identical to the SALEEN® Marks in connection with the advertisement, promotion, and sale of Defendant's products and services in competition with MJ Acquisitions' goods and services.  Said use is likely to cause confusion, mistake or deception and thus infringes MJ Acquisitions' rights under Section 32 of the Lanham Act.  15 U.S.C. § 1114.

33.     Defendant's actions, conduct and practices above at all times relevant to this action have been knowing and/or willful.  Thus, Defendant's actions constitute willful infringement of MJ Acquisitions' exclusive rights in the SALEEN® Marks in violation of Section 32 of the Lanham Act.  15 U.S.C. § 1114.

34.     As a direct and proximate result of Defendant's conduct, MJ Acquisitions has suffered irreparable harm to the valuable SALEEN® Marks.  Unless Defendant is restrained from further infringement of the SALEEN® Marks, MJ Acquisitions will continue to be irreparably harmed.

35.     MJ Acquisitions has no adequate remedy at law that will compensate it for the continued and irreparable harm it will continue to suffer if Defendant's acts are allowed to continue.

36. As a direct and proximate result of Defendant's conduct, MJ Acquisitions has suffered damages to the valuable SALEEN® Marks, and other damages in an amount to be proven at trial.

## COUNT II

## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

### (Section 43(a) of the Lanham Act)

37. MJ Acquisitions realleges and incorporates herein by reference the allegations of Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Defendant's willful and unauthorized use of the "Saleen" marks and/or counterfeits, reproductions, copies or colorable imitations thereof, in connection with the products and services that Defendant manufactures, advertises, promotes and sells, has caused and/or is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendant with the SALEEN® Brand Marks and/or MJ Acquisitions, or as to the origin, sponsorship or approval of Defendant's services or commercial activities, in violation of Section 43(a) of the Lanham Act.  15 U.S.C. § 1125(a).

39. Defendant's acts result in Defendant's unjust enrichment.

40. Defendant's acts each are greatly and irreparably damaging to MJ Acquisitions and will continue to damage MJ Acquisitions until enjoined by this Court.  MJ Acquisitions is without adequate remedy at law.

6012336.1 32130/129408

## COUNT III

**FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)**

**(Section 43(c) of the Lanham Act)**

41.     MJ Acquisitions realleges and incorporates herein by reference the allegations of Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     Defendant's unauthorized use of the "Saleen" marks dilutes the distinctive quality of the SALEEN® Marks, and is willfully intended to trade on MJ Acquisitions' reputation and goodwill and to dilute the distinctiveness of the SALEEN® Marks, all in violation of Section 43(c) of the Lanham Act.  15 U.S.C. § 1125(c).

43.     Defendant's acts each are greatly and irreparably damaging to MJ Acquisitions and will continue to damage MJ Acquisitions until enjoined by this court.  MJ Acquisitions is without adequate remedy at law.

44.     As a result of Defendant's actions, MJ Acquisitions has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT IV

**COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND MISAPPROPRIATION**

45.     MJ Acquisitions realleges and incorporates herein by reference the allegations of Paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.     Defendant's adoption and use of MJ Acquisitions' SALEEN® Brand Marks in connection with the products and services that Defendant manufactures, advertises, promotes and sells in Michigan will constitute, and/or has constituted, common law trademark infringement, unfair competition, and misappropriation of MJ Acquisitions' goodwill under the trademark and

11

unfair competition law of Michigan.

47. The actions, conduct, and practices of Defendant have been and/or will continue to be willful and/or knowing. MJ Acquisitions has been damaged by Defendant's actions.

## COUNT V

## COMMON LAW UNJUST ENRICHMENT

48. MJ Acquisitions realleges and incorporates herein by reference the allegations of Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. By virtue of Defendant's adoption of MJ Acquisitions' SALEEN® Brand Marks in connection with the products and services that Defendant manufactures, advertises, promotes and sells in Michigan, Defendant will be, or has been, unjustly enriched to the damage and irreparable harm of MJ Acquisitions.

## PRAYER FOR RELIEF

**WHEREFORE**, MJ Acquisitions respectfully requests that the Court enter judgment as follows:

1. That Defendant has infringed and diluted MJ Acquisitions' federally registered trademarks and engaged in unfair competition, in violation of the Lanham Act and the common law of the State of Michigan.

2. That there exists a substantial likelihood that Defendant will continue to infringe and dilute MJ Acquisitions' trademarks and engage in deceptive and unfair trade practices and unfair competition unless enjoined from doing so in the future.

3. Grant, under all claims for relief, a preliminary and ultimately a permanent injunction enjoining Defendant, its employees, agents, successors and assigns, and all those in active concert and participation with it, and each of them who receives notice directly or

6012336.1 32130/129408

otherwise of such injunctions, from:

      a.    using the SALEEN® Brand Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, in connection with the sale of their goods or services;

      b.    using the SALEEN® Brand Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, in any manner likely to cause others to believe that Defendant's products are connected to, affiliated with, or licensed by MJ Acquisitions;

      c.    making any false or misleading statements regarding MJ Acquisitions, or its SALEEN® branded products business, or the relationship between MJ Acquisitions on one hand, and Defendant, on the other hand;

      d.    committing any acts calculated to cause purchasers to believe that Defendant's products are MJ Acquisitions' genuine products;

      e.    shipping, delivering, holding for sale, or otherwise moving or transferring in any manner goods falsely bearing one or more of unauthorized "Saleen" marks, or any reproduction, counterfeit, colorable imitation of the SALEEN® Branded Marks; and

      f.    assisting, aiding, or abetting any person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (e).

4.    For an order that Defendant and any and all persons controlled by or acting in concert with Defendant, within thirty (30) days from the date any preliminary or permanent injunction is entered by the Court, be required to:

      a.    turn over to MJ Acquisitions all printed matter, signs, uniforms, business cards, advertisements, and other items bearing the complained of names, marks, designations, or logos;

    b. make available for inspection by MJ Acquisitions designee at MJ Acquisitions' principal place of business or other such mutually agreeable location, all commercial motor vehicles owned or operated by Defendant in its business to show compliance with the injunction; and

    c. provide to MJ Acquisitions by signed writing sent by registered or certified mail to counsel for Defendant, an affidavit evidencing compliance with the injunction and orders.

  5. For an order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by Defendant is authorized by MJ Acquisitions or related in any way to MJ Acquisitions' products or services.

  6. For an order permitting MJ Acquisitions and/or its auditors, to audit and inspect the books and records of Defendant for a period of six (6) months after entry of final judgment in this matter to determine the scope of Defendant's past use of the "Saleen" mark, including all revenues and sales related to such use, as well as Defendant's compliance with this Court's orders.

  7. That this case be found exceptional and MJ Acquisitions be awarded its attorneys' fees pursuant to Section 35(a) of the Lanham Act. 15 U.S.C. § 1117(a).

  8. That MJ Acquisitions recover the damages arising out of Defendant's wrongful acts in a sum equal to three times the actual damages suffered by MJ Acquisitions, pursuant to Section 35(b) of the Lanham Act. 15 U.S.C. § 1117(b).

  9. That MJ Acquisitions be awarded statutory damages in lieu of actual damages, as provided in Section 35(c) of the Lanham Act. 15 U.S.C. § 1117(c).

10. Enter judgment in favor of MJ Acquisitions and against Defendant requiring Defendant to jointly and severally pay MJ Acquisitions actual damages suffered as a result of Defendant's acts of unfair competition in accordance with the common law of the Michigan.

11. That MJ Acquisitions have and recover the taxable costs of this civil action, including reasonable attorneys' fees and interest.

12. For any and all other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

MJ Acquisitions, Inc. hereby demands a trial by jury in this action pursuant to Rule 38 of the Federal Rules of Civil Procedure, as to all claims and issues triable by a jury.

Respectfully submitted,

CLARK HILL PLC

By: /s/ Matthew W. Heron
Thomas M. Dixon (P41870)
tdixon@clarkhill.com
Mark Zietlow (P37022)
mzietlow@clarkhill.com
Matthew W. Heron (P61501)
mheron@clarkhill.com
Attorneys for Plaintiff
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
(313) 965-8300

Date: September 18, 2009

6012336.1 32130/129408